## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## AIKEN DIVISION

|  |  |
|---|---|
| **AARON MUNGIN**, </br></br> **Plaintiff,** </br></br> v. </br></br> **CHECKR, INC.** </br> Serve: The Corporation Trust Company, Reg. Agent </br>           Corporation Trust Center </br>           1209 Orange St. </br>           Wilmington, DE 19801 </br></br> **Defendant.** | Civil Action No. 1:25-cv-05060-MGL |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, AARON MUNGIN, by and through his undersigned counsel, and sues Defendant, Checkr, Inc. (hereinafter "Checkr") and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

### INTRODUCTION

1. Plaintiff brings this action against Checkr for violations of the FCRA, which imposes several important requirements on consumer reporting agencies, such as the Defendant, that sell employment-related consumer reports.

2. Plaintiff was a victim of an inaccurate consumer report sold by Checkr to a third-party prospective employer, Spark.

3. Spark bought an employment-purposed report from Checkr which contained incomplete and inaccurate records regarding Plaintiff.

4. Plaintiff was denied a job at Spark because Spark relied on the inaccurate consumer report about Plaintiff that failed to include information regarding a pardon that was issued to Plaintiff in 2022.

5. Plaintiff disputed the inaccuracies with Checkr, but Spark refused to accept the corrected report and Plaintiff was denied the job.

6. As a result of Checkr preparing and selling an inaccurate consumer report to Spark, Plaintiff was denied a job and left humiliated.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

## PARTIES

9. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a.

10. Plaintiff lives in Aiken County in the State of South Carolina.

11. Defendant is a consumer reporting agency ("CRA") as defined by defined by 15 U.S.C. § 1681a(f) of the FCRA.

12. Defendant obtains consumer information bearing on consumers' character, general reputation, personal characteristics and mode of living from myriad sources such as criminal and traffic records, social security number information, sex offender registries, etc.

13. After acquiring consumer information from its sources, Defendant regularly assembles that information into a report, which it then sells to third parties. In this case, Defendant sold information to Spark, which was a prospective employer of Plaintiff.

14. Defendant sells such consumer reports to customers throughout the country, using facilities of interstate commerce to transmit such reports, including but not limited to electronic transmission.

15. Checkr is corporation that was formed in Delaware but is headquartered in California, with its principal office address located at located at 1 Montgomery St., Suite 2000, San Francisco, CA 94104.

16. Checkr is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), that compiles, sells, furnishes, and uses consumer reports and services in the District of South Carolina and throughout the United States.

## FACTUAL ALLEGATIONS

*Any CRA Creating Consumer Reports for Employment Purposes Must Adhere to the Accuracy Requirements of Section 1681e(b)*

17. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

18. "The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and reasonable manner." *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted). "'These consumer oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives." *Cortez v. Trans Union, LLC,* 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond,* 45 F.3d at 1333).

19. Over a decade ago, the Third Circuit described the high duty of care imposed by Section 1681e(b) in a case against a CRA named Trans Union:

> [T]he distinction between "accuracy" and "maximum possible accuracy" is not nearly as subtle as may at first appear, it is in fact quite dramatic….
>
> There are, of course, inherent dangers in including any information in a credit report that a credit reporting agency cannot confirm is related to a particular consumer. Such information is nearly always "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for ... credit." 15 U.S.C. § 1681a(d)(1). Allowing a credit agency to include misleading information as cavalierly as Trans Union did here negates the protections Congress was trying to afford consumers and lending institutions involved in credit transactions when it enacted the FCRA….
>
> Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party….
>
> Trans Union remains responsible for the accuracy in its reports under the FCRA and it cannot escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that credit reporting agencies exercise care when deciding to associate information with a given consumer, and the record clearly supports the jury's determination that Trans Union did not exercise sufficient care here.

*Cortez v. Trans Union, LLC,* 617 F.3d 688, 709-10 (3d Cir. 2010).

20. Section 1681e(b) sets forth a CRA's overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

21. Plaintiff brings claims under 15 U.S.C. § 1681e(b) against Checkr because of the inaccuracies contained in his consumer report. Checkr created and sold a report about Plaintiff that included materially incomplete information regarding a public record. Reporting materially incomplete information is inaccurate, and Checkr harmed Plaintiff with its inaccuracies.

### *Plaintiff Discovers that Checkr Reported Incomplete and Inaccurate Public Record Information about Him*

22. In or around March of 2025, Plaintiff applied for a job with a company called Spark.

23. As part of the hiring process, Spark created a background report regarding Plaintiff.

24. Specifically, Spark paid Checkr to provide a consumer report on Plaintiff which included any previous criminal history.

25. In or around March of 2025, Plaintiff received a copy of his completed background report from Checkr which contained inaccurate information.

26. In that background report, Checkr was reporting a misdemeanor charge without also reporting that Plaintiff had been pardoned for the charge in March of 2022.

27. It was inaccurate for Checkr to report the charge without including the pardon.

28. On or about March 19, 2025, Plaintiff filed a dispute with Checkr, informing Checkr that the information it was reporting was incomplete.

29. On March 19, 2025, Checkr responded via email to Plaintiff that they had received his dispute.

30. Although Checkr corrected the reporting in response to Plaintiff's March 2025 dispute, it was too late. Plaintiff had already been denied the job.

31. As a result of the inaccurate and incomplete findings in the report from Checkr, Plaintiff was unable to get a position with Spark.

32. Checkr had actual notice that the misdemeanor had been pardoned.

33. Plaintiff had disputed inaccurate reporting by Checkr in or around March of 2022, after Checkr first inaccurately reported the misdemeanor without including information about Plaintiff's pardon.

34. Checkr subsequently furnished background reports regarding Plaintiff to Uber Eats on or around April 20, 2022, in which Checkr reported the misdemeanor and *included* the pardon.

35. Additionally, Plaintiff had been previously denied a job with Spark approximately two and a half years prior when, in or around September of 2022, Checkr provided a report to Spark in which Checkr wrongfully reported the misdemeanor without including that the misdemeanor had been pardoned.

36. Plaintiff disputed that inaccurate reporting in or around September of 2022, and Checkr subsequently created and sold four or more reports regarding Plaintiff which correctly included the pardon.

37. Therefore, when Checkr reported the inaccurate information regarding Plaintiff in March of 2025, it did so after having already reported the correct information six times before.[1]

## PLAINTIFF'S DAMAGES

38. Due to being denied a job with Spark, Plaintiff lost out on potential income he would have received.

---

[1] Two of these times were directly in response to a dispute by Plaintiff.

39. As a result of this conduct, including the actions and/or inactions of Checkr, Plaintiff suffered damages including but not limited to:

    a. Loss of income;

    b. Time spent disputing the inaccuracies;

    c. Embarrassment;

    d. Humiliation; and

    e. Mental and emotional anguish over repeatedly being denied employment due to Checkr repeatedly reporting the same inaccurate information about him.

40. Plaintiff has additionally felt fear and apprehension at applying for further jobs knowing that Checkr would likely just supply the same false report again, resulting in further employment denials.

41. Plaintiff has spent significant hours investigating how to rectify the situation.

## CAUSES OF ACTION

### COUNT I
### Violation of 15 U.S.C. § 1681e(b)

42. Plaintiff incorporates by reference all factual allegations set forth in this Complaint.

43. Checkr violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the background report and background files it published and maintains concerning Plaintiff.

44. Checkr allowed inaccurate information to be reported on Plaintiff's background file.

45. Checkr could have reviewed the original court files in Aiken County and seen that the misdemeanor had been pardoned. Additionally, Checkr could have reviewed *its own records* to see that Plaintiff had disputed this same incomplete reporting with Checkr at least twice before.

46. Discovery will show that Checkr has no such process in place even where, like here, the consumer previously disputed the inaccurate information, and that previous dispute (or those previous disputes) resulted in Checkr "revising" a previous report regarding that consumer.

47. As a direct result of this conduct, action and/or inaction of Checkr, Plaintiff suffered damages, including without limitation, denials for employment; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, apprehension in applying for employment, and the damages otherwise outlined in this Complaint.

48. Discovery will also show that Checkr is aware of shortcomings in its data-gathering processes, such as its failures to gather data directly from original court records and its failures to consider previous disputes in creating consumer reports like the ones at issue here.

49. Discovery will also confirm that this is entirely by design, as Checkr can create consumer reports more cheaply by using computerized data-gathering processes rather than going directly to courthouses and obtaining original records.

50. Checkr has known about these shortcomings in its processes for years, yet it continues to utilize the procedures it does in an effort to maximize profits while knowingly neglecting its FCRA obligations of maximum possible accuracy.

51. The FCRA has been in place since 1970, giving Checkr five and a half decades to learn its easy-to-follow mandates and become compliant.

52. Checkr also has access to information from FCRA enforcement authorities, courts, and other sources informing it of the FCRA's requirements.

53. The conduct, action, and/or inaction of Checkr was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C § 1681o.

54. Checkr's conduct, action, and/or inaction was also willful, additionally entitling Plaintiff to statutory damages of between $100 and $1,000, and punitive damages that are uncapped. 15 U.S.C. § 1681n.

55. Plaintiff is entitled to recover costs and attorneys' fees from Checkr in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n, 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1) Award Plaintiff actual and punitive damages for violations of the FCRA by Checkr;

(2) Award Plaintiff attorney's fees and costs under the FCRA;

(3) Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4) Award other relief as the Court deems appropriate

**TRIAL BY JURY IS DEMANDED**.

AARON MUNGIN

By:

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
**HAYS CAULEY, P.C.**
1303 West Evans Street
Florence, SC 29501
Phone: 843-665-1717
Facsimile: 843-665-1718
Email: phc917@hayscauley.com

9

Craig C. Marchiando*
**CONSUMER LITIGATION ASSOCIATES, P.C**.
763 J. Clyde Morris Blvd., Suite 1-A
Tel: (757) 930-3660
Fax: (757) 257-3450
Email: craig@clalegal.com

*Attorneys for Plaintiff*
*\*Pro Hac Vice forthcoming*